# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JARROD L. HENSON,                          )
                                           )
            **Petitioner/Defendant,**    )
                                           )    **CIVIL NO. 07-770-GPM**
vs.                                        )
                                           )    **CRIMINAL NO. 06-40030-03-GPM**
UNITED STATES of AMERICA,                  )
                                           )
            **Respondent/Plaintiff.**    )

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

      This matter is before the Court on Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Petitioner's motion is based on a claim of ineffective assistance of counsel during his change of plea hearing and his sentencing hearing. The Government responded to Petitioners's motion as ordered by this Court. For the reasons set forth below, Petitioner's motion is denied.

## FACTUAL BACKGROUND

      On May 3, 2006, an indictment was filed against Petitioner Jarrod L. Henson and two co-defendants, charging conspiracy to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). On May 10, 2006, Petitioner was arraigned and entered a not guilty plea; attorney David M. Williams was appointed to represent him. On July 11, 2006, the Government filed a sentencing enhancement under 21 U.S.C. § 851. On July 21, 2006, Petitioner pleaded guilty before United States Magistrate Judge Philip M. Frazier. On October 23, 2006, Petitioner was sentenced to 218 months imprisonment, 10 years supervised release, a fine of

$750, and a special assessment of $100. In December 2007, his sentence was reduced to 146 months under Federal Rule of Criminal Procedure 35(b).

On October 31, 2007, Petitioner filed this § 2255 motion to vacate, set aside, or correct this Court's judgment issued October 23, 2006, based on ineffective assistance of counsel. On November 24, 2008, the Court directed the Government to respond to Petitioner's motion, and the Government filed its response on February 9, 2009.

### DISCUSSION

### A.     Evidentiary Hearing

A motion filed under § 2255 does not require an evidentiary hearing. *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996); *see also Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). "[A] district court *must* grant an evidentiary hearing when the petitioner 'alleges facts that, if proven, would entitle him to relief.'" *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006), *citing Bruce*, 256 F.3d at 597 (emphasis in original). However, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," then a hearing is not required. *Id.* Allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing. *Bruce*, 256 F.3d at 597. Likewise, "mere speculation" does not warrant an evidentiary hearing, as the petitioner must file "'a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.'" *Prewitt*, 83 F.3d at 819, *quoting Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976). This affidavit is required because "'[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing.'" *Id.*, *quoting Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989).

Henson specifically requests an evidentiary hearing. Although he provides an affidavit to

meet the threshold requirement for a hearing, he alleges no facts in his motion or supporting affidavit that, if true, would entitle him to § 2255 relief.  After careful review of the motion and entire record in this case, the Court concludes that an evidentiary hearing is not required in this case; therefore, the Court will resolve the motion without a hearing.

### B.      Legal Standards

#### 1.      Collateral Review Under 28 U.S.C. § 2255

Section 2255 requires the court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack …."  28 U.S.C. § 2255.  "'Habeas corpus relief under § 2255 is reserved for extraordinary situations.'"  *Kafo*, 467 F.3d at 1068, *quoting Prewitt*, 83 F.3d at 816.  There are "significant procedural hurdles" to consideration of a petitioner's habeas claim.  *Bousley v. United States*, 523 U.S. 614, 615 (1998).  Collateral relief under § 2255 is appropriate only when a petitioner "demonstrate[s] that the alleged error is 'jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997), *quoting Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992).  "It is well-established … that a sec. 2255 motion is not a substitute for direct appeal."  *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (citations omitted).  "Claims not raised on direct appeal are barred from collateral review unless upon review, we have been convinced that a failure to consider the issue would amount to a fundamental miscarriage of justice."  *Id.*, *citing Prewitt*, 83 F.3d at 816.  "[T]here are three types of issues that a section 2255 motion can *not* raise:  (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional

issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (footnote omitted) (emphasis in original), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).

Although the availability of § 2255 collateral review is quite limited, procedural default cannot serve as the reason for dismissing an ineffective assistance of counsel § 2255 claim. *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005). "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). The Seventh Circuit has identified § 2255 motions as a more appropriate vehicle than direct appeal for raising ineffective assistance of counsel claims because the opportunity to adequately "develop the factual predicate for the claim" arises independent of the trial record. *Id.*, *citing Guinan v. United States*, 6 F.3d 468, 474 (7th Cir. 1993) (Easterbrook, J., concurring). However, when a "defendant confines his claim to the existing record and is represented by different counsel on appeal, an ineffective assistance of counsel argument is proper on direct appeal." *United States v. Stewart*, 388 F.3d 1079, 1083 (7th Cir. 2004), *citing McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996). Henson's grounds for relief under § 2255 are couched as ineffective assistance of counsel claims.

### 2.      Ineffective Assistance of Counsel

If a § 2255 motion claiming ineffective assistance of counsel survives preliminary review, the court evaluates the merits of the claim under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007), *citing Strickland v. Washington*, 466 U.S. 668, 690 (1984). "The burden upon a defendant pressing [an ineffective assistance of counsel] claim is a

'heavy one.'" *Harris v. Reed*, 894 F.2d 871, 874 (7th Cir. 1990), *quoting Sullivan v. Fairman*, 819 F.2d 1382, 1390 (7th Cir. 1987). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McDowell*, 497 F.3d at 761, *quoting Strickland*, 466 U.S. at 694. The Court is not required to analyze both prongs of the *Strickland* test. *Strickland*, 466 U.S. at 697. "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

### a.      Review of Attorney Performance

The Court's review of attorney performance is "'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002), *quoting Strickland*, 466 U.S. at 689. "Defense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.'" *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004), *quoting United States v. Traeger*, 289 F.3d 461, 470 (7th Cir. 2002). "Courts 'presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption.'" *Cooper*, 378 F.3d at 641, *quoting Traeger*, 289 F.3d at 472. Therefore, "[i]t is not easy for a petitioner to show that his counsel's performance was objectively ineffective, as … '[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light

of all the circumstances, and the standard of review is highly deferential.'" *Hartjes v. Endicott*, 456

F.3d 786, 790 (7th Cir. 2006), *quoting Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  In order

to establish that counsel's performance was deficient, the defendant must show "counsel made errors

so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."

*Strickland*, 466 U.S. at 687.

### b.  Prejudicial Effect of Attorney Performance

In order to establish that counsel's deficient performance resulted in prejudice to the

defendant, "the petitioner must show that 'there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" *Benefiel v. Davis*,

357 F.3d 655, 661 (7th Cir. 2004), *quoting Strickland*, 466 U.S. at 694.  "This test is 'highly

deferential' to counsel and presumes reasonable judgment and effective trial strategy." *Hays v.

United States*, 397 F.3d 564, 568 (7th Cir. 2005), *citing United States v. Scanaga*, 225 F.3d 780, 783-

84 (7th Cir. 2000).  While the defendant must demonstrate that counsel's unprofessional errors

actually had an adverse effect, *Strickland*, 466 U.S. at 693, "[n]ot every adverse consequence of

counsel's choices is 'prejudice' for constitutional purposes." *United States v. Springs*, 988 F.2d 746,

749 (7th Cir. 1993).  Counsel's conduct must be shown to have "'so undermined the proper

functioning of the adversarial process that the trial cannot be relied on as having produced a just

result.'" *Cooper*, 378 F.3d at 642, *quoting Strickland*, 466 U.S. at 686.  The defendant must prove

that counsel's ineffectiveness deprived him of a substantive or procedural right to which he is

entitled by law. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1992).  The defendant must introduce

objective evidence in support of his § 2255 motion – self-serving testimony is not sufficient to prove

the prejudice component of the *Strickland* test for ineffective assistance of counsel. *McCleese*, 75

F.3d at 1179; *cf. Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (defendant's failure to state

that he would have accepted a guilty plea but for counsel's advice and failure to present objective evidence to that effect fail to meet *Strickland's* prejudice prong).

### C.    Henson's Motion to Vacate, Set Aside, or Correct Sentence

It is clear that Henson suffered no prejudice as a result of counsel's alleged deficient performance.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  …  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed."  *Strickland*, 466 U.S. at 697.   Because Henson's plea agreement contains a waiver of his appellate rights regarding his conviction and/or sentencing, the Court construes Henson's arguments to relate to counsel's deficient performance during the plea negotiations.  *See United States v. Blinn*, 490 F.3d 586, 588 (7th Cir. 2007) (courts will enforce a plea agreement's appellate and collateral attack waiver "if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement").   While Henson alleges (without any supporting evidence) that counsel's alleged deficient performance resulted from the use of alcohol, the Court must "determine whether, *in light of all the circumstances*, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690 (emphasis added).  Because the Court has looked at all of the circumstances of this case, which reveal no evidence supporting Petitioner's claim that alcohol played a part in counsel's alleged deficiencies, the Court will not further discuss Petitioner's allegations of alcohol use.

### 1.    Henson's Admission to Drug Quantities

Henson claims that counsel's performance was deficient because he allowed Henson to plead guilty to manufacturing more methamphetamine than is mathematically possible.  Assuming,

*arguendo*, that counsel's performance was deficient in allowing Henson to plead guilty to manufacturing 500-1,500 grams of a mixture and substance containing methamphetamine, Henson suffered no prejudice as a result because it is abundantly clear from the record that this was an accurate account of Henson's relevant conduct. The stipulation of facts agreed to by Henson and the Government states in pertinent part: "The Defendant's relevant conduct is between 500-1,500 grams of a mixture and a substance containing methamphetamine." *United States v. Henson*, S.D. Ill., Criminal Case No. 06-40030-GPM (Doc. 50). Henson's statements given during the July 21, 2006, change of plea hearing clearly illustrate that Henson agreed with and accepted the stipulation of facts:

> THE COURT: I'll ask Mr. Henson. Have you read the stipulation of facts?
> THE DEFENDANT: Yes, sir.
> THE COURT: Has somebody read it to you? Has somebody gone over it with you?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you gone over it with Mr. Williams?
> MR. WILLIAMS: I have and discussed a slight change with Mr. Norwood.
> THE COURT: But do you think this accurately reflects the facts if the government were to proceed to trial and support a finding by a jury?
> MR. WILLIAMS: I do, Your Honor.
> THE COURT: Do you agree with that, Mr. Henson?
> THE DEFENDANT: Yes.
> MR. WILLIAMS: I would state for the record, Your Honor, that I have discussed with the defendant and written him in that regard that the range of 500 to 1,500 grams might be arguable, but I felt that Mr. – but at the very least it's only arguable. And I felt that in light of the government's promise to consider him for a Rule 35 reduction under the plea agreement, that we were better doing that than trying to go to trial and argue for a lesser amount of relevant conduct.[1]

---

[1] This exchange demonstrates that Mr. Williams' performance was not deficient regarding Henson's admission to manufacturing more than 500 grams of methamphetamine. *See also United States v. Henson*, No. 06-40030-GPM (Doc. 107) ("[T]here is no way that I could in good faith argue or put my client on the stand to try to prove up anything less than 500 based upon our conversations and my review of the discovery as a whole, your Honor."). Attorney Williams clearly made a tactical decision, which the Court will not second guess. *See United States v. Godwin*, 202 F.3d 969, 973 (7th Cir. 2000).

*United States v. Henson*, No. 06-40030-GPM (Doc. 106); *see generally Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (petitioner's argument that his counsel's advice rendered his plea unwitting and involuntary was belied by his own statements at the change of plea hearing, which were presumed truthful).

Furthermore, the Government, in its response to Henson's Objection to the Presentence Investigation Report, identified a voluntary statement given by Henson on March 21, 2006. *See United States v. Henson*, No. 06-40030-GPM (Doc. 67). In his statement, Henson identified the number of pseudoephedrine pills he supplied for cooking methamphetamine, the number of occasions on which he supplied them, and the amount of methamphetamine that resulted. Specifically, Henson admitted that he supplied his co-defendant Justin Ford 1,500 pseudoephedrine pills on approximately ten occasions from 2001 to 2002, from which they produced 30-40 grams of methamphetamine on each occasion. This resulted in the production of 300-400 grams of methamphetamine. Henson also admitted that from 2002 until his arrest, he manufactured methamphetamine with co-defendant Leroy Reed Burke, Jr., at least ten times, resulting in at least 255 grams of methamphetamine. Because these independent, voluntary admissions demonstrate that Henson's relevant conduct (more than 500 grams) was enough to trigger the statute's mandatory minimum, he suffered no prejudice from his counsel's performance during the plea negotiations. Henson has failed to "show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Benefiel,* 357 F.3d at 661, *quoting Strickland*, 466 U.S. at 694.[2]

---

[2]As an aside, counsel did file objections to the presentence investigation report challenging the relevant conduct attributable to Henson based on actions taken with Justin Ford. However, the Court need not discuss this – and how it negates any ineffective assistance claim relating to sentencing – because Henson waived his right to challenge the sentence. Henson

## 2.      Henson's Mental Disability

Henson also claims that counsel, presumably outside of the Court, insisted that he conceal his mental disability and failed to further investigate Henson's mental disability; the record supports neither contention.  Assuming, *arguendo*, that counsel did in fact instruct Henson to conceal his mental disability from the Court and/or failed to further investigate his mental disability, Henson suffered no prejudice for two reasons.  First, the colloquy during Henson's change of plea hearing cured any alleged deficiency.  Second, the statute under which Henson was sentenced, 21 U.S.C. § 841(b)(1)(B), gave the Court no discretion to lower his sentence based on mental disability.

During the change of plea hearing, Henson was specifically asked about his mental capacity and given the opportunity to discuss any of his counsel's shortcomings:

> THE COURT:  Have you ever been treated for any mental illness or addiction to narcotic drugs other than where you are right now?
> THE DEFENDANT:  Yes.
> THE COURT:  And for the record, you are currently in a treatment facility being treated for an addiction to methamphetamine; is that correct?
> THE DEFENDANT:  Yes, sir.
> THE COURT:  All right. Do you have any doubt, Mr. Williams, as to his competency to enter this plea agreement, make this plea today?
> MR. WILLIAMS:  No, Your Honor. Under the standard for fitness, I believe he meets it.
> THE COURT:  Do you think he understands exactly what he's doing?
> MR. WILLIAMS:  Exactly is a big word, but, yes, I think he does.
> THE COURT:  As nearly as any of us understand what we are doing from time to time.
> MR. WILLIAMS:  That would be correct.
> THE COURT:  And, Mr. Norwood, does the government have any doubts about anything?
> MR. NORWOOD:  No, Your Honor.
> THE COURT:  All right. Have you had adequate time to discuss this plea, change of plea, with your attorney?
> THE DEFENDANT:  Yes, sir.
> THE COURT:  Do you desire additional time for that now?
> THE DEFENDANT:  No, sir.
> THE COURT:  All right. Are you satisfied with the services that Mr. Williams has provided

---

cannot show ineffective assistance during the plea negotiations; therefore, the Court's inquiry goes no farther.

you thus far?

THE DEFENDANT:  So far, yes.

*United States v. Henson*, No. 06-40030-GPM (Doc. 106).  Thus, Henson informed the Court that he had adequate time to discuss his plea with counsel and that he was satisfied with counsel's representation during plea negotiations.  Representations made during plea hearings are "entitled to a presumption of verity."  *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000), *citing United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987).  Because Henson was given the opportunity to discuss with the Court his mental disability and his counsel's alleged deficiencies regarding it, Henson suffered no prejudice from counsel's alleged deficiencies.

Moreover, Henson suffered no prejudice from the lack of discussion regarding his mental disability because the statute under which he was sentenced does not allow for that factor to be taken into account.  While Henson is correct that the United States Sentencing Guidelines list mental and emotional conditions as "specific offender characteristics" that the Court may take into account when sentencing, the sentence that Henson received was required by the statute.  Section 841(b)(1)(A) of Title 21 specifically provides that a defendant with a prior felony drug conviction who is found guilty of manufacturing "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers … *shall* be sentenced to a term of imprisonment which *may not be less than 20 years*." 21 U.S.C. § 841(b)(1)(A)(viii) (emphasis added).  "In order to establish that he was prejudiced by counsel's failure to investigate his mental condition, [a defendant] must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Brown v. Sternes*, 304 F.3d 677, 696 (7th Cir. 2002), *quoting Strickland*, 466 U.S. at 694.  The only departure to which Henson was entitled resulted from the twenty-two months he

spent in custody for related cases, and that is what he received. Because the Sentencing Guidelines would have no effect on Henson's sentence due to a mental disability, there is no reasonable probability that the result of his sentencing would have been different had counsel emphasized Henson's alleged mental disability to the Court. Therefore, Henson has not satisfied *Strickland's* prejudice prong.

### CONCLUSION

Henson's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED**, and this action is **DISMISSED with prejudice.** The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 06/29/09

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge